UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

JS-6

Present: The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF ON STATUTE OF LIMITATIONS GROUNDS [78, 84]

## I. INTRODUCTION

Plaintiff Yi filed his Complaint against Defendant BMW of North America, LLC ("Defendant BMW") on August 31, 2017, alleging that his BMW 750Li ("the Vehicle") was defective. Dkt. 1. He asserted several legal claims in his Complaint, but in his brief regarding the statute of limitations, Plaintiff dropped all claims except his Song-Beverly Act claim. Dkt. 78 at 1.

The Court granted both parties' Motions *in Limine* to exclude each other's expert witnesses at a hearing on May 10, 2018. Dkt. 77.[1]

Given that Plaintiff leased the vehicle on December 17, 2009 and did not file his claim until nearly eight years later, the Court requested briefing on whether Plaintiff's claims were time barred.[2] *Id.* To clarify the facts of the case, the Court also requested the parties to provide it with the repair orders

---

[1] After the hearing at which the Court excluded Defendant's expert, Defendant nonetheless attached a declaration by that expert in support of its statute of limitations briefing. Dkt. 84, Brown Decl. Plaintiff objected to Defendant's use of the expert's declaration. Dkt. 87. The Court did not rely on Defendant's expert's declaration in reaching any of the conclusions set forth in this order. Therefore, the Court need not address Plaintiff's objections.

[2] The parties raised the statute of limitations issue before the Court did. Defendant pled the statute of limitations as an affirmative defense in its Answer. Dkt. 14 at 11. Defendant also proposed a jury instruction on the statute of limitations to which Plaintiff provided a statement in opposition. Dkt. 51 at 53–54.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | *Yi v. BMW of North America, LLC, et al.* | | |

documenting the repairs the Vehicle underwent. The parties provided the Court with an agreed-upon set of repair orders for the Vehicle during the May 10 hearing. *E.g.*, Dkt. 78 at 5 n.4.

Pursuant to the Court's request, Plaintiff filed his brief on the statute of limitations issue on May 12, 2018 and Defendant filed its brief on May 14, 2018. Dkts. 78, 84. The Court construes Defendant's briefing on the statute of limitations issue as a Motion for Summary Judgment. On May 14, 2018, the Court held a hearing at which the parties argued their respective positions on the statute of limitations issue. Dkt. 86. Having considered the parties' arguments in briefing and at the hearing, the Court **GRANTS** summary judgment against Plaintiff's claim because it is time barred.

## II. FACTUAL BACKGROUND

On December 17, 2009, Plaintiff leased the Vehicle new. Dkt. 78 at 3. The lease term was 36 months and allowed for 36,000 miles of use. Dkt. 84 at 4–5. The parties produced two express warranties that covered the vehicle at the time of the lease: (1) the bumper to bumper warranty and (2) the California emissions warranty. Dkt. 78 at 3. The bumper to bumper warranty covered the vehicle for four years or 50,000 miles, whichever came first. *Id.* It is undisputed that the bumper to bumper warranty expired in April 2011, when Plaintiff put 50,000 miles on the Vehicle. Dkt. 84 at 5. *See also* BMW Repair Orders for the Vehicle ("Repair Order") dated Mar. 29, 2011 and Aug. 30, 2011. The California emissions warranty covered certain parts of the Vehicle related to emissions. Dkt. 78, Ex. J. Coverage extended to the first 70,000 miles or 7 years, whichever came first. *Id.* The Repair Orders indicate that Plaintiff put 70,000 miles on the Vehicle around October 2011, at which time coverage under the California emissions warranty expired. *Id.;* Repair Orders dated Sept. 27, 2011 and Nov. 5, 2011. On January 28, 2013, Plaintiff purchased the Vehicle from the lease for $55,569. Dkt. 78 at 3; Dkt. 84 at 5. The purchase contract Plaintiff signed indicates that he purchased the Vehicle with no express warranty coverage. Dkt. 84, Ex. 4.

Plaintiff brought the Vehicle in to Pacific BMW for repairs beginning shortly after he signed the lease and continuing at least through 2017. *See* Repair Orders. In his statute of limitations briefing, Plaintiff listed "three broad categories" of complaints: (1) oil consumption issues, (2) rough handling issues, and (3) seatbelt issues. Dkt. 78 at 5. Plaintiff brought the Vehicle to Pacific BMW, complaining that the Vehicle was running "heavy" or "rough" on seven occasions over the course of nearly eight years. Repair Orders dated Mar. 10, 2010, Aug. 30, 2010, Mar. 29, 2011, Aug. 27, 2013, Jan. 13, 2014, Dec. 11,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

2014, Aug. 13, 2016. Plaintiff complained of low oil on five occasions during the same time period.[3] Repair Orders dated Apr. 22, 2010, June 2, 2010, Aug. 30, 2010, Nov. 15, 2011, Dec. 11, 2014. Finally, Plaintiff complained of problems with the seatbelts on three occasions. Repair Orders dated Mar. 10, 2010, June 2, 2010, Nov. 6, 2010.

In December 2014, Defendant offered its "Customer Care Package" to customers who leased or owned a 2009 BMW 750Li equipped with an N63 engine. Dkt. 78 at 14, Dkt. 84 at 3. The Customer Care Package covered the Vehicle. Dkt. 78 at 14. The Customer Care Package provided that vehicles subject to its terms could obtain a "6 point check, and if necessary, the replacement of one or more" engine components free of charge. Dkt. 84, Ex. 2. The Customer Care Package stated, "Please do not confuse this package with standard warranty repairs," and Defendant argued that the Customer Care Package is not a warranty. Dkt 84 at 3; Dkt. 84, Ex. 1. Nonetheless, Plaintiff's repair order dated February 5, 2015 listed "warranty" in the charge column for replacement of components covered by the Customer Care Package.

In his deposition, Plaintiff testified that he began experiencing problems with the Vehicle beginning shortly after he leased it in 2009. Dkt. 78, Ex. B ("From the time I got this car, even with the warranty that was purchased from a type of insurance company, there were a lot of issues. And after the warranty expired with the problems of power train and engine and transmission, I started doubting myself about this car."). Moreover, Plaintiff had experience with the repurchase process pursuant to the BMW warranty by virtue of problems he experienced with a previous BMW vehicle he owned. Yi Dep. 17:1–19 ("But as soon as I bought the [previous BMW] car from [Pacific BMW] from the first day, I started having lots of problems. I don't exactly recall what they were, but since I had lots of trouble from the car and I complained often enough, I guess, I don't know how many months after exactly, maybe one or two months after, they took the car back if I remember correctly.").

Notwithstanding the fact that he experienced problems with the Vehicle "from the time [he] got this car," Plaintiff did not file this lawsuit until August 2017. Dkt. 1. His deposition testimony indicates that he only decided to explore a lawsuit after receiving a letter from Strategic Legal, the law firm representing him in this case, claiming that "BMW 7 series are known to consume engine oil a lot more than usual." Dkt. 78, Ex. B.

---

[3] Plaintiff also claimed that he brought the Vehicle to Pacific BMW complaining of oil consumption problems on several occasions not documented by repair orders. Dkt. 78 at 12–13.

:

Initials of Preparer    PMC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | *Yi v. BMW of North America, LLC, et al.* | | |

### III. LEGAL STANDARD

The Court construes and treats Defendant's briefing as a Motion for Summary Judgment. Where parties present matters outside the pleadings to the Court on a Motion to Dismiss and the Court does not exclude such matters, the Motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d); *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007). Here, the parties cite and reference matters outside the pleadings in their statute of limitations briefing and the Court finds it necessary to consider such material to decide the Motion. Therefore, the Court will consider this Motion to be one for summary judgment. Fed. R. Civ. P. 12(d).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Whether the statute of limitations bars a claim is generally a question of fact. *E.g., E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1320 (2007). Whenever reasonable minds can only draw one conclusion from the facts presented, however, the statute of limitations issue becomes a question of law. *Id.*

### IV. DISCUSSION

#### a. Procedural Matters

As stated previously, the Court construes and treats Defendant's brief as a Motion for Summary Judgment on the statute of limitations issue. In its briefing, Plaintiff cites several cases pointing out that

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

that the American legal system is an adversary system where courts rely primarily upon the parties to present claims and arguments, presumably taking issue with the Court's request for briefing on the statute of limitations issue. *E.g.*, *Greenlaw v. U.S.*, 128 S. Ct. 2559, 2564 (2008). The Court agrees that our legal system is primarily an adversarial one. The Court notes, however, that the Ninth Circuit has affirmed a district court's decision to raise and rule on the statute of limitations issue *sua sponte*, where defendant pled the statute of limitations in its answer and the parties had an opportunity to be heard. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686–87 (9th Cir. 1993).

Here, the Court requested that the parties provide briefing on the statute of limitations issue.[4] Dkts. 60,77. The parties complied with the Court's request, each providing extensive briefing and exhibits. Dkts. 78, 84. The Court provided the parties with further opportunity to be heard at a multi-hour pretrial conference and hearing on May 14, 2018. Dkt. 86. Furthermore, Defendant pled the statute of limitations as an affirmative defense in its Answer. Dkt. 14 at 11. Defendant also proposed a jury instruction on the statute of limitations to which Plaintiff provided a statement in opposition. Dkt. 51 at 53–54. Moreover, the Court may consider the issue *sua sponte*, and the Court has complied with the Ninth Circuit's requirements for doing so. *Levald*, 998 F.2d at 986–87.

   b. **Statute of Limitations Governing the Song-Beverly Act**

The Song-Beverly Act does not contain its own statute of limitations; rather, California courts have applied the four-year limitations period for warranties arising under the California Commercial Code to Song-Beverly claims. *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1306 (2009); *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 211 (1991). The pertinent provision of the in the California Commercial Code provides a four-year limitations period and explains when a plaintiff accrues his claim:

   (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .
   (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of

---

[4] Plaintiff points out that Defendant improperly filed a letter to the Court requesting an opportunity to provide briefing on the statute of limitations issue. The letter was struck because it violated Local Rule 83-2.5. The letter does not impact the analysis here. As mentioned above, Defendant raised the statute of limitations issue by pleading it as an affirmative defense. Dkt. 14 at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | *Yi v. BMW of North America, LLC, et al.* | | |

    knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must wait until the time of such performance the cause of action accrues when the breach is or should have been discovered.

Cal. Comm. Code § 2725(1)–(2). As stated in the text of § 2725(2), a plaintiff's claim accrues when he discovers or should have discovered the breach. Courts have concluded that accrual of a claim – and the running of the statute of limitations – can take place before the expiration of the express warranty. *E.g.*, *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 642–43 (2003); *Krieger*, 234 Cal. App. 3d at 218.

   "A plaintiff pursuing an action under the [Song-Beverly]Act has the burden to prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element). (Civ. Code, § 1793.2; *Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 886–887 [263 Cal.Rptr. 64].)." *Oregel v. American Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001). To constitute a "reasonable number of repair attempts," a plaintiff must present the vehicle to the manufacturer or seller more than once, complaining of the same defect each time. *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 799 (2006).

    i. *Express Warranty Coverage*

   When Plaintiff leased the Vehicle in December 2009, two express warranties covered it: the bumper to bumper warranty and the California emissions warranty. Dkt. 78 at 3. The bumper to bumper warranty expired in April 2011, once Plaintiff drove the Vehicle 50,000 miles. Dkt. 84 at 5. *See also* BMW Repair Orders for the Vehicle ("Repair Order") dated Mar. 29, 2011 and Aug. 30, 2011. The California emissions warranty covers a limited number of the Vehicle's parts. Dkt. 78, Ex. J. This warranty expired, at latest, around October 2011, when Plaintiff had put 70,000 miles on the car. *Id.*; Repair Orders dated Sept. 27, 2011 and Nov. 5, 2011.

   In his briefing, Plaintiff points to coverage under three extended express warranties as relevant to the statute of limitations period. Dkt. 78 at 3–4. These warranties cover the fuel injectors, the engine vacuum pump, and the cylinder head covers for a period of 10 years or 70,000 miles, whichever comes

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

first. Dkt. 78, Ex. K. Plaintiff cannot, however, rely on these warranties to support its Song-Beverly claims nor to affect the running of the statute of limitations. Song-Beverly allows plaintiffs to bring claims for nonconformities covered by the express warranty. *Oregel*, 90 Cal. App. 4th at 1101. The Act defines "express warranty" as "a written statement *arising out of a sale* to the consumer of a consumer good . . . ." Cal. Civ. Code. § 1791.2(a)(1) (emphasis added). The Song-Beverly Act also defines "consumer good" as any *new* product. Cal. Civ. Code § 1791(a). It is undisputed that the extended express warranties did not "arise out of the sale." At the May 14, hearing, Defendant stated that the extended express warranties were issued for the Vehicle in 2015. Plaintiff stated that the extended express warranties were issued for the Vehicle in January 2016. The document Plaintiff provided listing the extended warranties dates each of them January 5, 2016. Regardless, the parties agree that the extended express warranties began covering the Vehicle well after both the lease and the purchase of the Vehicle, when it was no longer new. Therefore, the extended express warranties cannot support a Song-Beverly claim nor affect the statute of limitations.

Plaintiff also argues that repairs conducted on February 5, 2015 pursuant to the Customer Care Package extend the warranty to that date. Dkt. 78 at 15. Plaintiff's only evidence for this proposition is that the relevant Repair Order lists "warranty" in the cost column. *Id.*; Repair Order dated Feb. 5, 2015. Plaintiff cites passages from the deposition Ronald Webber, a BMW Customer Care Specialist, Dkt. 42 and 78, Ex. G, in an attempt to bolster its contention that the Customer Care Package extended the express warranty. Plaintiff asked Webber whether the fact that the February 5 repairs had the word "warranty" in the cost column means that the repair was "covered under warranty." Dkt. 78, Ex. G. Webber responded, "As I said before, it's paid through the warranty department. Whether, it was a separate account, this car *was not under the warranty program* at this time." *Id.* (emphasis added). Plaintiff provided additional excerpts of Webber's deposition, but in those excerpts, Webber never testified that the Customer Care Package repairs extended the express warranty. *Id.* Defendant counters with the Customer Care Package bulletin which states, "Please do not confuse this package with standard warranty repairs." Dkt. 84, Ex. 1. A subsequent bulletin regarding the Customer Care Package notes that, "Reimbursement for this Customer Care Package Program will be via normal claim entry . . . ." Dkt. 78, Ex. 2. This document complements Webber's explanation of the fact that "warranty" was listed in the cost column of the February 5 repairs: Defendant utilized the existing warranty reimbursement procedure to execute the Customer Care Package. The Court concludes that there is no genuine dispute between the parties as to whether the Customer Care Package extended the express warranty on the Vehicle: it did not.

    ii.  *Implied Warranty Coverage*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

Under the Song-Beverly Act, an implied warranty lasts no fewer than 60 days and no more than one year after purchase. Cal. Civ. Code § 1791.1(c). The Song-Beverly Act specifies that in the absence of an express warranty, the implied warranty obligation is imposed only when a consumer purchases *new* goods. Cal. Civ. Code § 1791(a) (defining "consumer goods" as any new product). The Song-Beverly Act extends an implied warranty obligation to used goods *only when* the manufacturer or retailer provides an express warranty covering those used goods. Cal. Civ. Code § 1795.5. Applying these principles to the facts of this case, Plaintiff's vehicle was covered by an implied warranty for at most one year beginning on December 17, 2009, the date of the lease. Cal. Civ. Code § 1791.1(c). When Plaintiff purchased the Vehicle out of the lease in January 2013, there was no implied warranty coverage because he did not purchase it new and because BMW did not cover the vehicle with an express warranty. Cal. Civ. Code § 1795.5.

Even if Plaintiff could show that the implied warranty was breached,[5] any implied warranty claim would still fail as a matter of law. Because Plaintiff cannot show that he discovered a breach of the implied warranty – if he could show any breach at all – after the first year of his lease, he cannot extend the statute of limitations for implied warranty breaches. California courts have held that an implied warranty claim is actionable where a defect exists at the time of sale, even if it manifests outside the warranty period. *E.g.*, *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304–05 (2009) ("The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale."). An implied warranty claim need not be discovered nor brought within the one year implied warranty period. *Id.* Thus, if the Vehicle had a latent defect within the first year (breaching the implied warranty), but the defect did not manifest until well after the one year implied warranty period ended, Plaintiff would have four years from the discovery of that latent defect to bring a claim. *See id.*

Plaintiff's claim does not benefit from delayed discovery as applied to implied warranties for two

---

[5] A vehicle must be severely defective to breach of the implied warranty. *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 25 (2007) (finding a breach of the implied warranty where the "vehicle . . . smells, lurches, clanks, and emits smoke over an extended period of time"); *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1296 (1995) (noting that implied warranties do not require perfection; rather, they "provide for a minimum level of quality"); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012) ("The basic inquiry [with respect to implied warranties], therefore, is whether the vehicle was fit for driving."). Here, Plaintiff complains of excessive oil consumption, "rough riding," and seatbelt issues that were largely cosmetic. Dkt. 78 at 5. On this record, without the benefit of expert testimony, a reasonable jury could not conclude that a breach of the implied warranty took place.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

reasons. First, without an expert witness, Plaintiff cannot show that any defects he discovered after the conclusion of the one year implied warranty period existed during the first year of the lease. *See id.* Secondly, Plaintiff's evidence shows that the defects actually manifested within the first year, meaning that the defect was not "latent." Thus, Plaintiff's implied warranty claim, if he had one, would begin running in the first year of the lease. Indeed, Plaintiff complained about overconsumption of oil, "rough riding," and seatbelt issues within the first year of the lease. Repair Orders dated Mar. 10, 2010, Apr. 22, 2010, June 2, 2010, Aug. 30, 2010, Nov. 6, 2010. Consequently, Plaintiff cannot argue that latent defects manifested after the one year implied warranty period such that any implied warranty breach would alter the statute of limitations analysis.

   *iii. Discovery Rule*

   Plaintiff seeks to extend limitations period on his claim by invoking the discovery rule. Dkt. 78 at 16–19. Under the statute of limitations applicable to the Song-Beverly Act, a plaintiff's claim accrues when he discovers or should have discovered the breach of warranty. Cal. Comm. Code § 2725(2). The "discovery rule" can "[postpone] the accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). Plaintiff has a "reason to discover" the cause of action as soon as he "has a suspicion of wrongdoing." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) ("Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."). Plaintiffs seeking to benefit from the delayed discovery rule must show that they diligently pursued their claims, and that they could not have discovered their claims earlier, even if they exercised diligence. *Id.* at 1112.

   In the context of the Song-Beverly Act, courts have held a plaintiff to be on notice of his claim – beginning the running of the statute of limitations – *before* the expiration of the express warranty if a plaintiff discovered or should have discovered his claim before then. *E.g.*, *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 642–43 (2003); *Krieger*, 234 Cal. App. 3d at 218. Courts have found that a Song-Beverly plaintiff was on notice of his claims for statute of limitations purposes after as few as two or four repair visits for the same problem. *Durkee v. Ford Motor Co.*, 2014 WL 7336672, at *6 (N.D. Cal. Dec. 24, 2014) ("Plaintiffs asserted that four failed repair attempts for the same engine problems is a 'reasonable number of attempts' for purposes of establishing a claim of breach of express warranty under the Song–Beverly Act. . . . Plaintiffs cannot now take the position that they were not on inquiry notice of the alleged

                                :_____

                    Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

breach of express warranty . . . ." (citation omitted)); *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 925 (C.D. Cal. 2010) (finding that plaintiff was on notice of his claims after two repair attempts).[6]

Here, Plaintiff brought the Vehicle to the dealership complaining of "rough riding" for the second time on August 30, 2010; he brought the Vehicle in complaining of low oil for the second time on June 2, 2010;[7] and he brought it in complaining about the seatbelt for the second time on June 2, 2010. Repair Orders dated Mar. 10, 2010, Apr. 22, 2010, June 2, 2010, Aug. 30, 2010. According to the logic of *Ehrlich*, Plaintiff was on notice of his claims, causing the statute to begin to run, in 2010.

Moreover, in his deposition testimony, Plaintiff testified that he began experiencing problems with the Vehicle beginning shortly after he leased it in 2009. Dkt. 78, Ex. B ("From the time I got this car, even with the warranty that was purchased from a type of insurance company, there were a lot of issues. And after the warranty expired with the problems of power train and engine and transmission, I started doubting myself about this car."). Plaintiff's testimony shows he had a suspicion of wrongdoing shortly after he leased the Vehicle.[8] *See Jolly*, 44 Cal. 3d at 1111. He was therefore required to exercise diligence in pursuing this claim. *Id.* at 1112. Plaintiff nonetheless asserts that he did not discover his claim until March 2017 when he received a letter from the law firm representing him in this case notifying him about problems common with BMWs of the same model as the vehicle. Dkt. 78, Ex. B. This conclusory allegation cannot save Plaintiff's discovery rule claim. Clearly, Plaintiff impermissibly "[waited] for the facts to find [him]." *Jolly*, 44 Cal. 3d at 1111. The evidence shows that he could have discovered his claim as early as 2010 and if he did not discover his claim until 2017, despite testifying to scores of problems with the Vehicle, then he "[sat] on his rights." *Id.* The discovery rule cannot save his tardy filing.

Any argument by Plaintiff that he could not have discovered his claim because Defendant actively

---

[6] Order authored by Judge Audrey Collins, now a Justice on the California Court of Appeal.
[7] Plaintiff claims that he made repair visits on several occasions for which he did not receive a repair order. Dkt. 78 at 12–13. In particular, he asserts that Defendant generally did not issue repair orders when Defendant provided service for oil-related issues. Id. Therefore, June 2, 2010 was only the second *documented* visit regarding low oil. Given Plaintiff's claim that he did not always receive repair orders, he brought the Vehicle in for oil-related service on more occasions than the repair orders documented.
[8] In addition, Plaintiff knew that BMW would repurchase defective vehicles and he knew the process for requesting a repurchase because he had done it before. Yi Dep. 17:1–19. Plaintiff "complained often enough" to BMW about a previous car that "they took the car back." *Id.* Therefore, not only did Plaintiff have a suspicion of wrongdoing regarding the Vehicle that is the subject of this case, but he also knew how to go about vindicating any claim he had.

Initials of Preparer     :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

concealed it from him fails for two reasons. First, a claim that Defendant actively concealed problems with vehicles like Plaintiff's is belied by the service bulletins and Customer Care Package Defendant released. Dkt. 78, Exs. A, D, E. At the very least, the service bulletins and the Customer Care Package indicate that Defendant did not seek to hide problems with vehicles like Plaintiff's. Rather, Defendant sought to address problems. The second reason this argument fails is that it sounds in fraud, and this Court already dismissed Plaintiff's fraud claim. *See Durkee*, 2014 WL 7336672, at *7; Dkt. 33.

      iv. *Class Action Tolling*

Plaintiff cannot benefit from the class action tolling doctrine in this case. Under the tolling rule articulated by the Supreme Court in *American Pipe*, the filing of a class action lawsuit in federal court tolls the statute of limitations for the claims of unnamed class members until the class certification issue is resolved. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). In order for the statute of limitations to be tolled, however, it must not have run before the class action was filed.

Plaintiff claims that the filing of the class action *Bang v. BMW of North America, LLC*, Case No. 2:15-cv-06945-MCA-SCM (D.N.J.) tolled the statute of limitations on his Song-Beverly claim. *Bang* was filed on September 18, 2015. Dkt. 78 at 20. As stated previously, the evidence shows that Plaintiff discovered or should have discovered his Song-Beverly claim as early as 2010, meaning the statute had run by the time *Bang* was filed.

Even if the statute had not run by September 2015 because of the discovery rule, Plaintiff still cannot benefit from class action certification. It is undisputed that the bumper to bumper warranty expired in April 2011 when Plaintiff put 50,000 miles on the Vehicle. Dkt. 84 at 5. *See also* Repair Orders dated Mar. 29, 2011 and Aug. 30, 2011. Plaintiff's Song-Beverly claims under the bumper to bumper warranty had therefore run by April 2015 at latest, before *Bang* was filed. *See* Cal. Comm. Code § 2725(2). Plaintiff could cite coverage under the California emissions warranty to extend his claims until the *Bang* filing. The California emissions warranty covered certain components of the Vehicle for 7 years or 70,000 miles, whichever came first. Dkt. 78, Ex. J. Plaintiff put 70,000 miles on the Vehicle around October 2011, meaning that he had until October 2015 to bring any Song-Beverly claims under the California emissions warranty. Cal Comm. Code § 2725(2); Dkt. 78, Ex. J; Repair Orders dated Sept. 27, 2011 and Nov. 5, 2011. If Plaintiff could show that any of his Song-Beverly claims resulted from parts covered by the California emissions warranty, then he could argue that he still had a claim at the time *Bang* was filed.

|  | : |
|---|---|
| Initials of Preparer | |
| PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

    Without an expert witness, however, Plaintiff cannot show that any defects with the Vehicle resulted from the specific components the California emissions warranty covered. Fed. R. Evid. 701("If the witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on . . . technical . . . knowledge within the scope of Rule 702."). One California court found that a Song-Beverly plaintiff did not need an expert witness to prove that a persistent oil leak constituted a defect. *Oregel*, 90 Cal. App. 4th at 1102 n.8 ("It is within the realm of common knowledge that a new car with an unremediable oil leak does not conform to its warranty, and no expert testimony is needed to establish this proposition."). This case does not apply here for two reasons. First, *Oregel* is factually distinct from this case. In *Oregel*, plaintiff's vehicle leaked oil to a degree that plaintiff received a letter from the homeowners' association complaining "there was an oil spill on the driveway where he parked the car and asking him to clean the oil from the driveway." *Id.* at 1097. Plaintiff's complaints were not that the car was leaking oil, but rather in his view, the oil needed topping off more than he believed it should. Secondly, the question here is not only whether there is a defect but also what component *caused* the defect. This must be established to determine whether any defect Plaintiff claims results from defects of a component covered by the California emissions warranty. The California emissions warranty is distinct from the bumper to bumper warranty in that the California emissions warranty covers only certain components of the vehicle, whereas the bumper to bumper warranty covers all the Vehicle's components. See Dkt. 78, Ex. J. A Song-Beverly plaintiff making a claim under the bumper to bumper warranty would not need to show what caused the defect, only that there was a defect. *Oregel*, 90 Cal. App. 4th at 1102 n.8. But here, if Plaintiff seeks to use the California emissions warranty to extend the statute of limitations, then he must show that the defects were caused by components the California emissions warranty covers. Plaintiff needs an expert witness to make this showing because only a witness with technical knowledge can testify to the *cause* of a defect. Fed. R. Evid. 701.

    Even if Plaintiff's expert were to testify, linking the defects of which Plaintiff complained to a component covered by the California emissions warranty, Plaintiff's class action tolling argument would still fail. *Bang* was filed in federal court in New Jersey. Dkt. 1, Ex. 1. The statute of limitations on a California statute applied by a federal court in California is not tolled by the filing of a class action in federal court in New Jersey. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to adopt cross-jurisdictional tolling in California); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*, 878 F. Supp. 2d 1009, 1015–17 (C.D. Cal. 2011) ("This Court is persuaded that cross-jurisdictional tolling, as discussed by the Ninth Circuit in *Clemens* and *Hatfield*, includes all situations where a class action is filed outside the California state court system, irrespective of whether the class claims are made under California law.").

                                                                                                                   :

Initials of Preparer        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

v. *Equitable Tolling*

Plaintiff seeks to benefit from the doctrine of equitable tolling, but his argument on this score fails as well. "The 'equitable tolling' doctrine is a judicially created doctrine designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 38 (1989). Where a plaintiff seeks equitable tolling because of a previously filed class action, courts use three factors when determining whether to apply the doctrine: (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009). The Court concludes that Plaintiff has not met the requirement of good faith and reasonable conduct because he did not act with diligence in bringing his claim after he discovered or should have discovered his claim, as detailed in the subsection of this order regarding the discovery rule.

vi. *California Civil Code § 1793.1*

Plaintiff argues that a provision of the Song-Beverly Act tolled the expiration of the express warranty covering the Vehicle. Cal. Civ. Code § 1793.1(a)(2) ("If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed."). According to Plaintiff, Defendant never repaired defects that manifested during the warranty period; therefore, the warranty never expired. Dkt. 78 at 26–27. When viewed in the context of the Song-Beverly Act as a whole, however, Plaintiff's argument here must fail.

First, the Court analyzes the sentence Plaintiff cites in the context of § 1793.1 as a whole. § 1793.1 begins by directing "[e]very manufacturer, distributor, or retailer making express warranties with respect to consumer goods [to] fully set forth those warranties in simple and readily understood language . . . ." The language of this subsection shows that its purpose is to regulate how parties making express warranties communicate those warranties to customers, not necessarily to set forth the legal parameters of express warranties.

Secondly, the Court analyzes the sentence Plaintiff cites in the context of the specific subsection of § 1793.1 in which it appears. § 1793.1(a)(2) begins: "Every work order or repair invoice for warranty

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

repairs or service shall clearly and conspicuously incorporate in 10-point boldface type the following statement either on the face of the work order or repair invoice, or on the reverse side, or on an attachment to the work order or repair invoice," followed by a paragraph that must be printed on all work orders or repair invoices. The sentence Plaintiff cites is part of the paragraph that must be printed on repair orders:

> A buyer of this product in California has the right to have this product serviced or repaired during the warranty period. The warranty period will be extended for the number of whole days that the product has been out of the buyer's hands for warranty repairs. *If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed.* The warranty period will also be extended if the warranty repairs have not been performed due to delays caused by circumstances beyond the control of the buyer, or if the warranty repairs did not remedy the defect and the buyer notifies the manufacturer or seller of the failure of the repairs within 60 days after they were completed. If, after a reasonable number of attempts, the defect has not been fixed, the buyer may return this product for a replacement or a refund subject, in either case, to deduction of a reasonable charge for usage. This time extension does not affect the protections or remedies the buyer has under other laws.
>
> Cal Civ. Code §1793.1(a)(2) (emphasis added).

Even if this paragraph were meant to set forth the precise legal parameters of express warranties under the Song-Beverly Act, when viewed on the context of the subsection, this sentence cannot stand for the proposition for which Plaintiff cites it. *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989))). First, Plaintiff's interpretation renders other parts of the same subsection moot. Immediately following the sentence Plaintiff cites, the subsection provides other, more limited circumstances under which the express warranty would be tolled. *Id.* ("The warranty period will also be extended if the warranty repairs have not been performed due to delays caused by circumstances beyond the control of the buyer, or if the warranty repairs did not remedy the defect and the buyer notifies the manufacturer or seller of the failure of the repairs within 60 days after they were completed."). Under Plaintiff's interpretation, the sentence in question would swallow those limited provisions in their entirely.

Third, the Court analyzes the sentence Plaintiff cites in the context of the Song-Beverly Act as a

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-06467-SVW | Date | May 24, 2018 |
|---|---|---|---|
| Title | Yi v. BMW of North America, LLC, et al. | | |

whole. Those limited provisions in § 1793.1(a)(2) are borrowed from § 1795.6, a subsection of the Song-Beverly Act whose clear purpose is to set forth rules for tolling the expiration of express warranties. § 1795.6 does not, however, contain the sentence from § 1793.1(a)(2) Plaintiff cites here. Under Plaintiff's interpretation of the sentence in question, § 1793.1(a)(2) would render the tolling provision of § 1795.6(b) moot as well. Also, the absence of the sentence in question from § 1795.6 indicates that its function in § 1793.1(a)(2) is to set forth a highly generalized principle in language easy to understand for the average consumer. The subsequent sentences of § 1793.1(a)(2) go on to elaborate the specifics of when express warranties can be tolled.

Finally, the Court notes the statutory interpretation canon that instructs courts to privilege specific statutory language over the general. *See Brown & Williamson*, 529 U.S. at 143. Where, as here, one interpretation of general statutory language would render the specific language in two subsections moot, the Court finds that the specific provisions control. *See id.*

### vii. California Civil Code § 1795.6

Plaintiff argues that § 1795.6(b) tolls the express warranty on the Vehicle by asserting, "Plaintiff informed BMW's dealer . . . within 60-days of the applicable express warranties being expired, including but not limited to the 7 years/70,000 miles warranty." Dkt. 78 at 29. Plaintiff misunderstands § 1795.6(b). Under this provision, an express warranty is tolled if a plaintiff presents his vehicle for repair, the defendant fails to repair the defect, and plaintiff informs the defendant "within 60 days *after the repairs or service was completed*." Cal. Civ. Code § 1795.6(b) (emphasis added). In order to toll the expiration of the express warranty, the plain language of the statute requires a plaintiff to inform the dealer that the nonconformity was not remedied within 60 days of the repair attempt, not within 60 days of the expiration of the express warranty. Plaintiff provided no evidence and does not assert in his brief that he informed Defendant within 60 days of a repair attempt that it did not remedy the nonconformity. Therefore, Plaintiff's argument under § 1795.6(b) fails.

## V.  CONCLUSION

For foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's claim, finding that it is barred by the statute of limitations.

IT IS SO ORDERED.

|  | : |
|---|---|
| Initials of Preparer | |
| PMC | |